# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

COLLAB9, LLC,

    Plaintiff/ Counterclaim
    Defendant,

    v.

EN POINTE TECHNOLOGIES SALES,
LLC and PCM, INC.,

    Defendants/Counterclaim Plaintiffs/
    Third-Party Plaintiffs.

C.A. NO. N16C-12-032 MMJ CCLD

---

EN POINTE TECHNOLOGIES SALES,
LLC and PCM, INC.,

    Counterclaim Plaintiffs/Third-Party
    Plaintiffs,

    v.

COLLAB9, LLC and ATTIAZAZ
MUNAWAR DIN,

    Counterclaim Defendant and
    Third-Party Defendant.

COLLAB9, LLC,

    Plaintiff,

    v.

MICHAEL RAPP, an individual, and MLR
CONSULTING, a California corporation

    Defendants.

C.A. NO. N19C-02-141 MMJ CCLD

1

Submitted: June 19, 2019
Decided: September 17, 2019

On Defendants' Motion to Dismiss Counts II and III
of Plaintiff's Third Amended Complaint
**GRANTED**

On Plaintiff/Counterclaim Defendant Collab9, LLC and
Third-Party Defendant Attiazaz Munawar Din's
Motion to Dismiss Counts I and II of Counterclaims
**GRANTED IN PART, DENIED IN PART**

On Defendants Michael Rapp and MLR Consulting's
Motion to Dismiss
**STAYED AT THIS TIME**

## OPINION

Karen A. Jacobs, Esquire (Argued), Susan W. Waesco, Esquire (Argued) and Alexandra M. Cummings, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Jason R. Scherr, Esquire (Argued), Joseph Bias, Esquire, Clara Kollm, Esquire, Morgan, Lewis & Bockius, LLP, David M. Stein, Esquire, Sarah Kelly-Kilgore, Esquire, Greenberg Gross LLP, Attorneys for Defendants En Pointe Technologies Sales, LLC, PCM Inc., Michael Rapp and MLR Consulting


Joel Friedlander, Esquire, Jeffrey M. Gorris, Esquire, Christopher P. Quinn, Esquire, Friedlander & Gorris, P.A., Richard D. Robins, Esquire, Gary Ganchrow, Esquire (Argued), Parker, Milliken, Clark, O'Hara & Samualian, APC, Attorneys for Plaintiff/Counterclaim Defendant Collab9, LLC and Third-Party Defendant Attiazaz Munawar Din


**JOHNSTON, J.**

2

## FACTUAL AND PROCEDURAL CONTEXT

This dispute concerns Earn Out payments. The underlying Asset Purchase Agreement ("APA") closed on April 1, 2015. Purchaser PCM bought substantially all of the assets of the En Pointe business from seller Collab9. In addition to the initial purchase price, PCM agreed to pay a 36-month Earn Out. The Earn Out is calculated as 22.5% of En Pointe's Adjusted Gross Profit.

Collab9 filed Civil Action No. N16C-01-032 on December 5, 2016. The Third Amended Complaint was filed on September 10, 2018. Counts II and III are the subject of PCM and En Pointe's Motion to Dismiss.[1] Count II alleges that En Pointe breached the implied covenant of good faith and fair dealing by: maintaining financial records in a way that made it impracticable to accurately determine the correct amounts of Earn-Out payments; creating a sham entity to move revenue off En Pointe's books; and renewing certain contracts or transferring sales persons or accounts as a means of minimizing Adjusted Gross Profit. Count III claims fraud on the basis that En Pointe's quarterly Earn-Out certifications were inaccurate.

PCM filed Counterclaim I for fraud and intentional misrepresentation; Counterclaim II for breach of contract; and Counterclaim III for tortious interference.

---

[1]Count I alleged breach of contract. Count IV is a claim for declaratory judgment.

The Counterclaims arise primarily from alleged misrepresentations by Collab9 and Third- Party Defendant Din during negotiations leading to the APA, as well as breaches of representations and warranties. Counterclaim Defendants Collab9 and Din have moved to dismiss Counterclaims I and II. Collab9 and Din assert that the fraud claims are time-barred, duplicative of contract claims, barred by an anti-reliance provision, and that the contract claims also are time-barred.

Collab9 filed a second case in this Court on February 15, 2019, Civil Action No. N19C-02-141. This action is against Defendants Rapp and MLR Consulting, alleging that Defendants breached their commitment to maximize Earn-Out payments. Count I asserts breach of the Finder's Agreement, in which MLR agreed to advise Collab9 as to the "structuring of the go-forward business processes of the proposed Transaction" to maximize Earn Out. Count II claims breach of the Consulting Agreement by Rapp. Count III is for breach of the implied covenant of good faith and fair dealing. Defendants Rapp and MLR have moved to dismiss all Counts on the grounds of failure to state a claim.

**STANDARD OF REVIEW**

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances

4

susceptible of proof."[2]  The Court must accept as true all well-pleaded allegations.[3] Every reasonable factual inference will be drawn in the non-moving party's favor.[4]  If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[5]

## ANALYSIS

*En Pointe and PCM's Motion to Dismiss Count II*
*Implied Covenant of Good Faith and Fair Dealing*

The implied covenant of good faith and fair dealing "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."[6]  The implied covenant cannot be used to override the express terms of the contract.   The covenant is not a free-floating duty, and can only be invoked conservatively to ensure that the parties' reasonable expectations are fulfilled. "General allegations of bad faith conduct are not sufficient.  Rather, the plaintiff must

---

[2] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[3] *Id.*

[4] *Wilmington Sav. Fund Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[5] *Spence*, 396 A.2d at 968.

[6] *Dunlap v. State Farm & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract. Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully."[7]

If the conduct at issue is authorized by the agreement, the covenant will not be implied. Contract terms only will be added "when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain...."[8] The parties' reasonable expectations at the time of contracting control the analysis. Agreements cannot be judicially revised to assist parties who later discover that they have made a disadvantageous deal.[9] "The implied covenant only applies to developments that could not be anticipated, not developments that the parties simply failed to consider...."[10]

Collab9 alleges that when the parties entered into the transaction, all expected increased revenues and profits would result in additional Earn-Out payments. Collab9 claims that PCM and En Pointe thwarted this expectation in numerous ways, including:

---

[7] *Kuroda v. SPJS Holdings, L.L.C,* 971 A.2d 872, 888 (Del. Ch. 2009).

[8] *Nemec v. Shrader,* 991 A.2d 1120, 1125-26 (Del. 2010).

[9] *TWA Resources. v. Complete Production Services, Inc.,* 2013 WL 1304457, at *9 (Del. Super.).

[10] *Nemec,* 991 A.2d at 1126.

6

transferring En Pointe contracts to a sham entity, transferring sales persons and accounts not for legitimate business reasons, and providing knowingly false Earn-Out Certifications that concealed the inaccuracy of the Earn-Out Statements.

Section 2.2(e) of the APA provides:

> Subsequent to the Closing, Purchaser shall have sole discretion with regard to all matters relating to the operation of the Business. Purchaser shall have no express or implied obligation to the Seller, the Primary Stockholder or Option Holder to take an action, or omit to take any action, to seek to maximize the Earn Out payment by seeking to maximize sales, pursuing particular business opportunities, engaging in advertising or marketing campaigns, or otherwise. Purchaser owes no duty, as a fiduciary or otherwise, to Seller, the Primary Stockholder or Option Holder in connection with its operation of the Business following the Closing.

Section 2.2(e) is comprehensive and explicit. PCM was provided by contract with the sole discretion to operate the business post-closing. The parties specifically agreed that PCM had neither an express nor implied obligation to maximize the Earn Out.

Section 12.8 of the APA states that the APA and Transaction Agreements "contain the complete agreement among the parties and supersede any prior understandings, agreements or representations by or among the parties, whether written or oral....Each party acknowledges that no other party has made any representations, warranties, agreements, undertakings or promises except for those expressly set forth

7

in their Agreement or in the agreements referred to herein or therein that survive the execution and delivery of this Agreement."

The implied covenant involves "inferring contractual terms to handle developments or contractual gaps that...neither party anticipated."[11] The express terms of the APA demonstrate that the parties contemplated that a dispute might arise concerning the operation of the business post-closing, specifically whether the purchaser was acting in a manner that maximized the Earn Out.

Of course, every party's actions must be consistent with the terms of the contract. The Delaware Supreme Court consistently has held that a trial court only can imply terms when it is clear that the parties would have agreed to the omitted terms.[12] The unambiguous terms of the contract grant broad rights to the purchaser to operate the business as it sees fit. To grant additional unspecified rights "would be to grant the plaintiff[], by judicial fiat, contractual protections that they failed to secure for themselves at the bargaining table."[13]

---

[11] *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015) (quoting *Nemec*, 991 A.2d 1020 at 1025).

[12] *Winchall v. Viacom Int'l Inc.*, 76 A.3d 808, 816 (Del. 2013).

[13] *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004), *aff'd*, 861 A.2d 1251 (Del. 2004).

The Court finds that Collab9's implied covenant of good faith and fair dealing claims are duplicative of the breach of contract claims. Additionally, Section 2.2(e) of the APA contemplated the dispute concerning post-closing Earn-Out maximization. Therefore, En Pointe and PCM's Motion to Dismiss Count II is hereby **GRANTED.**

### *En Pointe and PCM's Motion to Dismiss*
### *Count III Fraud*

Collab9 challenges Defendants' calculation of the Earn Out on the basis that Defendants deliberately failing to include various income as defined by the APA. Collab9 also contends that Defendants provided Earn-Out certifications and statements that were not in accordance with the requirements of the APA. Collab9 alleges fraud and material misrepresentation on the grounds that Defendants breached their duty to ensure and certify that all of the reconciliations and calculations were full and complete. Additionally, Defendants knew that their alleged representations were false.

The Court finds that on it face, the fraud and misrepresentation claim appears to be a repackaging of the breach of contract claim. Each of the failures alleged by Collab9 are based in duties under the APA. The fraud claims are not distinct from Collab9's contract claims.

9

Breach of contract claims cannot be bootstrapped into fraud claims "merely by alleging that a contracting party never intended to perform its obligations."[14] Collab9 cannot obtain the same damages for both fraud and contract.[15] Fraud claims that duplicate contract claims, and seek essentially the same recovery, cannot survive.[16]

Additionally, Collab9's fraud claim sounds in tort. There is no recovery in tort for purely economic loss.[17] The economic loss doctrine prohibits tort claims where overlapping contract claims adequately address the injury alleged.[18]

Therefore, on the basis of claim duplication and the economic loss doctrine, En Pointe and PCM's Motion to Dismiss Count III Fraud is hereby **GRANTED.**

### *Collab9's Motion to Dismiss Count I of the Amended Counterclaims Fraud in the Inducement*

*Counterclaims Not Time-Barred*

---

[14] *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch.).

[15] *Albert v. Alex Brown Mgt. Serv., Inc.*, 2005 WL 2130607, at *7 (Del. Ch.).

[16] *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *6 (Del. Super.).

[17] *Lima Delta Co. v. Gulfstream Aerospace Corp.*, 2019 WL 624589, at *1–3 (Del. Super.), *appeal dismissed*, 210 A.3d 147 (Del. 2019).

[18] *Brasby v. Morris*, 2007 WL 949485, at *6 (Del. Super.).

10

The Counterclaims were introduced first in the form of an attachment to Defendants' Motion for Leave to Amend Answer to Assert Counterclaims, filed on April 11, 2017. Collab9 filed a Memorandum in Opposition. The parties entered into a tolling agreement to preserve the *status quo*. Collab9 filed its Second Amended Complaint on June 20, 2018. The Answer to Second Amended Complaint and Counterclaims were filed on June 27, 2018. Collab9 has moved to dismiss the Counterclaims as untimely, and on the basis of certain contract provisions.

Superior Court Civil Rule 15(c)(2) provides:

> *Relation back of amendments.* An amendment of a pleading relates back to the date of the original pleading when...(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

The applicable statute of limitations is three years for fraud claims.[19] Collab9 states that the fraud claims accrued on the Closing Date, April 1, 2015.

Defendants sought leave of the Court to bring the Counterclaims on April 11, 2017. The Counterclaims were filed as an attachment to the motion. The Counterclaims themselves could not be filed until the Court addressed the motion. Answer to Second Amended Complaint and Counterclaims were filed on June 27,

---

[19] 10 *Del. C.* §8106.

11

2018, seven days after the Court issued an Order permitting the filing of Plaintiff's Second Amended Complaint.

The Court finds that the Counterclaims arose out of the same conduct, transaction or occurrence attempted to be set forth[20] in Defendants' Motion for Leave to Amend Answer to Assert Counterclaims, filed on April 11, 2017. Therefore, the Counterclaims relate back to April 11, 2017 and were timely filed within three years of April 1, 2015.

*Fraud Counterclaim and Contract Provision*

Defendants concede that Collab9 has pled fraud in the inducement. However, Defendants assert that Collab9 has failed to assert damages distinct from those alleged in the breach of contract claims. Collab9 claims that its contract damages are separate and distinct from fraud damages. Collab9 argues that the fraud occurred before the parties entered into the APA.

Section 12.8 of the APA states:

> **12.8 Complete Agreement.** This Agreement and the Transaction Agreements contain the complete agreement among the parties and supersede any prior understandings, agreements, or representations by or among the parties, whether written or oral, including without limitation that certain Exclusivity Agreement dated February 25, 2015 by and among

---

[20] *See* Del. Super. Ct. Civ. R. 15(c)(2).

12

Seller, Purchaser and PCM. Each party acknowledges that no other party has made any representations, warranties, agreements, undertaking or promises except for those expressly set forth in this Agreement or in agreements referred to herein or therein that survive the execution and delivery of this Agreement.

An anti-reliance clause prevents parties from claiming justifiable reliance on any extra-contractual representations.[21] Such clauses allow parties to define those representations of fact upon which the bargain is premised, and minimize the risk of liability based on promises outside the contract. For an anti-reliance clause to be enforceable, it must be clear that the plaintiff "promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract."[22] The *ChryonHego* court dismissed the fraud claims as being precluded by the anti-reliance clause, when read in conjunction with the integration clause.[23]

The Court finds that Section 12.8 is in substance a clear anti-reliance clause. The contractual provision in *ChryonHego* stated that the parties had not made "any representation, warranty, covenant or agreement, express or implied...other than those representations, warranties, covenants and agreements explicitly set forth in this Agreement." This language is substantively identical to Section 12.8, which provides:

---

[21] *ChyronHego Corp. v. Wight*, 2018 WL, 3642132, at *4 (Del. Ch.).

[22] *Id.* (quoting *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004).

[23] *Id.* at *5-6.

"Each party acknowledges that no other party has made any representations, warranties, agreements, undertaking or promises except for those expressly set forth in this Agreement or in agreements referred to herein or therein that survive the execution and delivery of this Agreement."

In this case, Section 12.8 is a combined integration and anti-reliance provision. Section 12.8 is unambiguous. The parties clearly expressed their intent to preclude reliance on representations made prior to the effective date of the APA.

The Court finds that the Counterclaims relate back to April 11, 2017 and are not time-barred. Nevertheless, the APA anti-reliance provisions apply. Therefore, Collab9's Motion to Dismiss Count I (Fraud in the Inducement) of the Amended Counterclaims is hereby **GRANTED.**

### *Collab9's Motion to Dismiss Count II of the Amended Counterclaims Breach of Contract*

### *Rule 12(b)(6)*

Collab9 asserts that Defendants have failed to plead facts sufficient to sustain breach of contract under Sections 6.4, 6.7, 6.8, 11.2, 11.6 and 12.12.

In considering a motion to dismiss under Superior Court Civil Rule 12(b)(6), the Court reviews the claims to determine whether there can be recovery under any

14

reasonably conceivable set of circumstances.[24] Every reasonable factual inference must be drawn in favor of the non-moving party.[25]

Under this notice pleading standard, the Court finds that Count II of the Amended Counterclaims pleads facts sufficient to survive Rule 12(b)(6) dismissal.

*Survival of Representations and Warranties*

Collab9 argues that Defendants' Counterclaim for breach of contract is barred by the APA's two-year survival period.

Section 11.1 provides in part:

**11.1 Survival of Representations and Warranties.** All representations and warranties...in this Agreement or any other Transaction Agreement shall survive the Closing for a period of 24 months (the "Survival Date");...any claim for indemnification based upon a breach of any such representation or warranty and asserted prior to the Survival Date by written notice...***shall survive until final resolution of such claim....***

(Emphasis added.)

PCM gave Claims Notice in writing on February 8, 2017. It is undisputed that as of April 11, 2017, the claims had not reached final resolution. The Court has found that the Counterclaims are deemed to have been filed effective April 11, 2017.

---

[24] *Continental Finance Co, LLC v. TD Bank, N.A.*, 2018 WL 565305, at *1.

[25] *Doe v. Cahill*, 884A.2d 451, 458 (Del. 2005).

Collab9 asserts that non-indemnification claims are barred by the two-year survival period. The claims accrued on April 1, 2015, the date of the APA closing.

Ordinarily, indemnification comes into play when one party to a contract agrees to indemnify a second party to the contract for liability resulting from third-party claims against the second party. However, the APA states that Seller indemnification may apply "whether or not involving a third party claim" resulting from "any breach or inaccuracy of a representation or warranty...."[26] Indemnification by Purchaser and PCM is contractually mandated for all "Damages, whether or not involving a third party claim, arising out of, relating to or resulting from (a) any breach or inaccuracy of a representation or warranty of Purchaser or PCM contained in this Agreement [or] any breach of a covenant [or] Assumed Liability."[27] Section 11.6 explicitly addresses direct claims: "In the event of a claim that does not involve a Third party Claim, being asserted against it, the Indemnitee shall deliver a Notice of Claim to the Indemnitor." The reasonable interpretation of Section 11.1 Survival is that all claims for breach of representation or warranty (with the exception of specifically enumerated claims under Sections 6.1 (Organization, Good Standing, Qualification), 6.2 (Authority; Binding Nature of Agreements), 6.8 (Title; Sufficiency; Condition of Assets) and 6.18

---

[26] APA §11.2.

[27] APA §11.3.

(Brokers)), are claims for indemnification. Properly noticed indemnification claims survive the 24-month period until final resolution.

The Court finds that Counterclaim II asserts direct claims under Section 11.6. All claims noticed before April 1, 2017 are timely-filed and survive the 24-month period until final resolution. Therefore, Collab9's Motion to Dismiss Count II (Breach of Contract) of the Amended Counterclaims is hereby **DENIED.**

Having denied dismissal on the foregoing grounds, the Court need not address the issues of estoppel under the statute of limitations, equitable estoppel or discovery rule tolling.

### *Defendants Rapp and MLR Consulting's Motion to Dismiss*

Collab9 filed a separate case (C.A. No. 19C-02-141) against Defendants Michael Rapp and MLR Consulting. This second action claims that the Finder's Agreement and Consulting Agreement ("Rapp Agreements") effectively nullified the APA. According to Collab9, these agreements imposed duties not contained in the APA. Rapp and MLR were required to maximize the Earn Out and failed to do so.

Rapp and MLR have moved to dismiss the complaint in the second action.

These two cases are not identical. However, both involve issues of contractual duties including: maximizing earnings, and the accuracy of representations and warranties. In essence, the damages sought in both lawsuits are based on any difference

17

in Earn Out payment received, and the Earn Out payments Collab9 claims should have been paid.

The Court finds that these cases are not merely related. Resolution of the factual and legal questions are inextricably intertwined. In the interest of judicial economy for the Court and for the parties, the Court will stay the 2019 action until resolution of the 2016 case. All documents produced in the 2016 action shall be deemed as discovery also produced in the 2019 action.

Defendant Rapp and MLR Consulting's Motion to Dismiss is hereby **STAYED AT THIS TIME.**

## CONCLUSION

The Court finds that Collab9's implied covenant of good faith and fair dealing claims are duplicative of the breach of contract claims. Further, Section 2.2(e) of the APA contemplated the dispute concerning post-closing Earn-Out maximization. Therefore, En Pointe and PCM's Motion to Dismiss Count II (Implied Covenant of Good Faith and Fair Dealing) is hereby **GRANTED.**

On the basis of claim duplication and the economic loss doctrine, En Pointe and PCM's Motion to Dismiss Count III (Fraud) is hereby **GRANTED.**

The Court finds that the Counterclaims relate back to April 11, 2017 and are not time-barred. Nevertheless, the APA anti-reliance provisions apply. Therefore,

18

Collab9's Motion to Dismiss Count I (Fraud in the Inducement) of the Amended Counterclaims is hereby **GRANTED**.

Under the notice pleading standard, the Court finds that Count II (Breach of Contract) of the Amended Counterclaims pleads facts sufficient to survive Rule 12(b)(6) dismissal. The Court finds that Counterclaim II asserts direct claims under Section 11.6. All claims noticed before April 1, 2017 are timely-filed and survive the 24-month period until final resolution. Therefore, Collab9's Motion to Dismiss Count II (Breach of Contract) of the Amended Counterclaims is hereby **DENIED.**

The Court finds that these two cases are significantly related. Resolution of the factual and legal questions are inextricably intertwined. In the interest of judicial economy for the Court and for the parties, the Court will stay C.A. No. N19C-02-141 until resolution of C.A. No. N16C-12-032. All documents produced in the 2016 action shall be deemed as discovery also produced in the 2019 action. Defendant Rapp and MLR Consulting's Motion to Dismiss is hereby **STAYED AT THIS TIME.**

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston